**DOUGLAS A. BERMAN**
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210
Telephone: (614) 688-8690
E-mail: berman.43@osu.edu

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION
KNOXVILLE

---

UNITED STATES OF AMERICA,

     Plaintiff,

         vs.

MICHAEL R. WALLI, et al,

     Defendants.

Criminal No. 12-107-ART-(1),(2),(3)

**FRIEND-OF-THE-COURT BRIEF**

---

     Douglas A. Berman, the Robert J. Watkins/Procter & Gamble Professor of Law at The Ohio State University Moritz College of Law, at the request of Judge Amul R. Thapar respectfully submits this friend-of-the-court brief.

## I.     Amicus Perspectives on "Heartland" Definition and Departure Analysis

     The Minute Entry Order (hereinafter "Order") requesting this submission, after discussing a defendant's requests for a downward departure from the guideline range, expressed concern "with the issue of defining an offense's heartland." Order at 8. The Order thereafter asked whether a court should "define the heartland by (1) the United States' charging decisions (that is, the type of defendant or crime the United States charges under a particular statute) or (2) the intentions of Congress and the Sentencing Commission." Order at 10. Based on the U.S. Supreme Court's

(admittedly opaque) explication of the "heartland" concept for use in departure analysis in *Koon v. United States*, 518 U.S. 81 (1996), Amicus respectfully suggests that **neither** the United States' charging decisions **nor** the intentions of Congress and the Sentencing Commission should be central to how a district court conducts heartland analysis. Amicus believes that the heartland concept as explained by the Supreme Court does not connote that the relevant heartland can or should be readily discerned from the intention of provision drafters or from prosecutorial charging practices. Rather, as explained below, the Supreme Court's discussion of departure decision-making in *Koon* suggests that assessing a "heartland" calls for a district court to make a multi-faceted, contextual normative judgment to be informed by the enacted text of the applicable guideline(s), by case-specific facts and factors, and by its unique "vantage point and day-to-day experience in criminal sentencing." *Koon*, 518 U.S. at 98.

## A. *Koon* calls for case-specific "heartland" assessments, not general legal rulings

Commentators have explained how and why the heartland concept, though perhaps conceptually appealing, provides enduring challenges for district judges seeking to make wise and consistent departure decisions in actual cases. *See* Marc L. Miller & Ronald F. Wright, *Your Cheatin' Heart(land): The Long Search for Administrative Sentencing Justice*, 2 Buff. Crim. L. Rev. 723, 765-800 (1999) (detailing the "failure of the heartland concept" and lamenting that, "[i]nstead of providing meaning, the heartland concept has had a pernicious effect on the guidelines system"); Paul J. Hofer, *Discretion to Depart After* Koon v. United States, 9 Fed. Sent'g Rep. 8, 8-10 (1996) (noting that the heartland concept "may appear straightforward [but] presents too many unanswered questions" for courts to be able to apply it effectively and consistently). Despite commentators' forceful claims that the heartland concept may foster more confusion than clarity, the concept remains central to departure analysis because of the Supreme Court's emphasis on heartlands in *Koon*. And these passages from *Koon* discussing departures and sentencing decision-

making, in turn, connote that heartland analysis calls for sentencing courts to make contextual

assessments based distinctly on unique, case-specific offense and offender facts:

> A district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court.  Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.  To resolve this question, ***the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing***.  Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases.…  To ignore ***the district court's special competence*** — about the 'ordinariness' or 'unusualness' of a particular case — would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the ***fact-specific circumstances of the case***….

> Considerations like these persuaded us to adopt the abuse-of-discretion standard in [other settings where], as here, we noted that deference was owed to ***the judicial actor ... better positioned than another to decide the issue in question***.   [In other cases], we adopted deferential review to afford the district court the necessary flexibility to resolve ***questions involving multifarious, fleeting, special, narrow facts*** that utterly resist generalization.  Like the questions involved in those cases, a ***district court's departure decision involves the consideration of unique factors*** that are little susceptible ... of useful generalization.

> The Government seeks to avoid the factual nature of the departure inquiry by describing it at a higher level of generality linked closely to questions of law.  The relevant question, however, is not, as the Government says, whether a particular factor is within the "heartland" as a general proposition, but ***whether the particular factor is within the heartland given all the facts of the case***.  For example, it does not advance the analysis much to determine that a victim's misconduct might justify a departure in some aggravated assault cases.  What the district court must determine is whether the misconduct that occurred ***in the particular instance suffices to make the case atypical***.

*Koon*, 518 U.S. at 98-100 (emphasis added and internal citations and quotations omitted).

These passages, especially the specific phrases highlighted above, lead me to believe it

would be improper for a district court to have its heartland analysis primarily informed by general

prosecutorial practices or by the general intent of Congress or the Sentencing Commission.  To

focus on such broader matters risks turning departure decision-making into an effort to define "the

'heartland' as a general proposition" contrary to the Supreme Court's instructions in *Koon*.

Instead, a district court's responsibility according to the Supreme Court is to decide "whether [a]

particular factor is within the heartland given all the facts of the case" — a decision which requires a district court to "make a refined assessment of … the fact-specific circumstances of the case" and calls for "the consideration of unique factors," about which a district court has "special competence" due to its distinctive "vantage point and day-to-day experience in criminal sentencing." *Koon*, 518 U.S. at 98-100.

District courts do not have "special competence" concerning the type of defendant or crime the United States charges under a particular statute nor concerning the intentions of Congress and the Sentencing Commission when drafting statutes and guidelines. Moreover, though in *Koon* there was some disagreement among the Justices concerning exactly how to apply its general departure analysis to the sentencing of the police officers convicted of violating the civil rights of motorist Rodney King, the Supreme Court's opinion in *Koon* did not focus its heartland analysis on the general charging practices of the United States or on the intent of Congress or the Sentencing Commission when drafting particular statutes or guideline provisions.[1] This reality reinforces my view that it is not useful for district courts to consider these matters extensively in its departure decision-making. Instead, as the *Koon* Court indicated, a district judge's task is ultimately to make a "refined assessment" of case-specific facts, which will involve "the consideration of unique factors" in order to make a context-specific judgment about "the 'ordinariness' or 'unusualness' of a particular case" based on "all the facts of the case." *Koon*, 518 U.S. at 98-100.

---

[1] Justice Breyer's separate opinion in *Koon* does make reference to the legislative purpose of certain criminal statutes and the Sentencing Commission's likely awareness of these purposes when discussing his views about a particular guideline's heartland. *See Koon*, 518 U.S. at 118-19 (Breyer, J., concurring in part and dissenting in part). But the opinion for the Court in *Koon* neither accepted Justice Breyer's methodology nor his conclusions, and the Court's apparent disinclination to discuss the intent of Congress or the Sentencing Commission further suggests that the Court did not believe heartland analysis is effectively advanced by a focus on such matters.

4

**B. Virtues of prescriptive rather than descriptive departure/heartland analysis**

Because the Court's Order expressed interest in "any additional thoughts" concerning heartland definition and departure analysis, I wish to briefly explain my view that, in a difficult and contested sentencing case, bringing a prescriptive focus to departure analysis is appropriate and in keeping with congressional commands and the Supreme Court's teachings in *Koon*. A full accounting of my perspective on these matters can be found in a lengthy law review article, *Balanced and Purposeful Departures: Fixing a Jurisprudence that Undermines the Federal Sentencing Guidelines*, 76 Notre Dame L. Rev. 21 (2000), but the title's reference to "purposeful departures" highlights the essence of my view that departure decision-making is best advanced in difficult cases if and when it is guided by, and focused on, the purposes of punishment Congress set forth in 18 U.S.C. § 3553(a)(2).

As discussed at length in my article, Congress adopted a departure standard in the Sentencing Reform Act with both a descriptive and a prescriptive component: 18 U.S.C. § 3553(b) states that a judge must, in order to depart, find (1) "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" which (2) "should result in a sentence different from that described." The "heartland" inquiry speaks to the descriptive component of this departure standard — i.e., whether a fact or factors have been "adequately taken into consideration by the Sentencing Commission" — and the Supreme Court's ruling in *Koon* reinforces the sensible notion that, in the course of adjudicating specific cases with particularized facts, district courts will often encounter case-specific facts and factors that the Commission could not have "adequately" considered. The Commission, after all, operates from an *ex ante* system-wide perspective and creates and revises the guidelines by examining sentencing outcomes in the aggregate without directly considering any of the individual human beings who have violated federal law; district judges operate instead

5

from an *ex post* case-specific perspective and impose sentences only after individually considering and passing judgment on the real persons who have actually committed offenses. Consequently, as I explain in my article, the descriptive component of the SRA's departure standard is not especially well-positioned or well-designed in difficult cases to serve as the primary focus of departure decision-making.

Instead, the prescriptive component of the SRA's departure standard — the requirement that a court find an aggravating or mitigating circumstance which "should result in a sentence different from that described" — seems better-designed and likely more effective, especially concerning difficult and contested issues, to serve as a helpful guide for sound departure decision-making. Thus, I would urge this Court to bring a more prescriptive focus to its departure analysis: this Court should assess and seek to explain why and how it believes any particular factors in the case at hand urged as the basis for a departure may (or may not) **normatively** justify a sentence outside the Guidelines' recommended range in light of the purposes of punishment Congress set forth in 18 U.S.C. § 3553(a)(2).[2]

I stress these points — and urge the Court to examine my *Notre Dame Law Review* article about departure jurisprudence if it seeks a more fulsome general discussion of these matters —

_____

[2] My advocacy for bringing a prescriptive focus to departure analysis here is distinct from the suggestion in Justice Souter's separate opinion in *Koon* that courts categorically reject as a basis for departure any factor that would "attribute a normative irrationality to the heartland concept." *Koon*, 518 U.S. at 114-18 (Souter, J., concurring in part and dissenting in part). The opinion for the Court in *Koon* rejected the claim that § 3553(a)(2) should be interpreted to require "courts to test potential departure factors against its broad sentencing goals and to reject, as a categorical matter, factors that are inconsistent with them." *Koon*, 518 U.S. at 108. In so holding, the Court in *Koon* seemed again principally driven to ensure that departure analysis is always focused on a case's "particular circumstances" rather than on "whether a given factor ever can be an appropriate sentencing consideration." *Id.* at 108-09. Consequently, though *Koon* teaches that courts should not categorically reject departure factors based on the statutory sentencing purposes set forth by Congress, the ruling still supports judicial departure analysis involving a multi-faceted, contextual normative judgment informed by the text of the applicable guideline and case-specific facts and factors.

because they inform not only my perspective on the "heartland" analysis, but also my views on appropriate ways for this Court to account at sentencing for the broad terms of 18 U.S.C. § 2155(a) and to assess whether the a defendant's prior good works qualify as "exceptional" to permit a departure.  In my view, it is not wise for the litigants in this case or for this Court to be spending considerable time and energies researching, contemplating and debating matters such as the United States' charging decisions or the intentions of Congress and the Sentencing Commission or the various subsets of Americans against which a defendant's history and characteristics might be seen as typical or extraordinary.[3]  Rather, I believe the litigants and this Court should instead spend time and energies contemplating and debating whether and how a defendant's history as a civilian peace protestor or prior good works "should result" in a sentence outside the Guidelines because these factors may (or may not) further the purposes of punishment set forth in the 18 U.S.C. § 3553(a)(2).[4]

---

[3] In *United States v. Crouse*, 145 F.3d 786 (6th Cir. 1998), the Sixth Circuit found that a fraud defendant's "civic works was a permissible ground for the district court to consider in departing downward" and that it should "defer to the district court's factual finding that this case was sufficiently unusual to take it out of the heartland of white collar offenders." *Id.* at 790-91.  The Sixth Circuit subsequent observation that "community works … are not unusual for a prominent businessman," *id.* at 792, was in conjunction with the court's expressed concerns about a large downward departure based on only this factor given the defendant's involvement in a "sophisticated [fraudulent] scheme spanning a period of several years." *Id.* at 790.  The *Crouse* ruling does not establish or even suggest that a particular comparative population or subset of Americans must be used to calibrate whether a certain defendant's prior good works are or are not "exceptional."  Rather, *Crouse* seems to carry forward given the Supreme Court's essential message in *Koon* that district court's departure decision-making, including not only the decision to depart but also the extent of any departure, must reflect a "refined assessment" of "fact-specific circumstances" in order to make a contextualized normative sentencing judgment based on "all the facts of the case." *Koon*, 518 U.S. at 98-100.

[4] Practical as well as conceptual reasons suggest departure decision-making in difficult cases should focus on whether and how factors in the case at hand normatively justify a departure rather than on matters such as the United States' charging decisions or the intentions of the Sentencing Commission or which Americans should be comparatively considered to assess if defendant's history and characteristics.  These external factors can and do often vary over time and by region, and it is unclear what time-frame and region should dominate if these considerations were to be central to departure decision-making.  If, for example, the intent of the Sentencing Commission

## II.    Import of U.S.S.G. § 2M2.3 and 18 U.S.C. § 2155(a) Covering a Range of Conduct

The general discussion of heartland and departure analysis set forth in Part I is pertinent to sentencing decision-making under any statute and guideline. But the fact that 18 U.S.C. § 2155(a) covers a broad range of conduct, and especially given that U.S.S.G. § 2M2.3 provides merely a single base offense level for multiple statutory offenses and incorporates no specific offense characteristics, provides additional support for the view that this Court should conclude that it has considerable discretion to give effect through departure decision-making to any distinctive aspect of the defendants' offense conduct which this Court concludes "should result in a sentence different from that described" in the guidelines.

The Sentencing Commission has explained in the Introduction to the Guidelines Manual that its guidelines generally "contain a significant number of real offense elements [in order to] take account of a number of important, commonly occurring real offense elements ... through alternative base offense levels, specific offense characteristics, cross references, and adjustments." U.S. Sentencing Guidelines Manual, ch. 1, pt. A, introductory cmt. 4(a) (2013). This reality, which is reflected in many guidelines having numerous pages of detailed instructions requiring multiple adjustments to applicable offense levels, has prompted the Sentencing Commission to further explain that it "believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often … because the guidelines, offense by offense, seek to take account of those factors that the Commission's data indicate made a significant difference in pre-guidelines

was deemed central to "heartland" definition, arguably the intent of more recent Commissions (which consider guideline revisions each year) should be weighted more heavily than the intent of the Commission which drafted a particular guideline. Similarly, because federal prosecutorial priorities in many districts are often impacted by changing local conditions and are sometimes modified nationwide by the Attorney General, a "heartland" which was defined in terms of charging practices under a particular statute could problematically "bleed out" in many different directions in different regions at different times.

sentencing practice." *Id.*, introductory cmt. 4(b). Consequently, for example, because the guidelines include many provisions requiring offense-level adjustments based on the number and nature of victims of a fraud, it is unsurprising and fitting that sentencing courts are typically disinclined to depart from the guidelines in a fraud cases based on the number and nature of victims.

In sharp contrast to the norm in most cases before federal courts involving intricate and complicated guidelines, the offense at issue in the case at bar is rare and U.S.S.G. § 2M2.3 lacks any instructions with "alternative base offense levels, specific offense characteristics, cross references, [or] adjustments." But the absence of any additional sentencing instructions in U.S.S.G. § 2M2.3 ***does not*** reflect a considered judgment by the Sentencing Commission (or any other policy-maker) that various potential offense facts and factors are not relevant to a sentencing decision in a specific case. Instead, as the Sentencing Commission explains, where "the guidelines do not specify an augmentation or diminution, this is generally because the sentencing data did not permit the Sentencing Commission to conclude that the factor was empirically important in relation to the particular offense." *Id.,* introductory cmt. 4(b). In other words, the rarity of the offense at issue in the case explains why the applicable guideline lacks the detailed adjustments common to other guidelines, and the Sentencing Commission has itself stated that departure authority is the proper means for district courts to deal with this reality: "Of course, an important factor (e.g., physical injury) may infrequently occur in connection with a particular crime (e.g., fraud). Such rare occurrences are precisely the type of events that the courts' departure powers were designed to cover — unusual cases outside the range of the more typical offenses for which the guidelines were designed." *Id.*

This extended explication of the Sentencing Commission's Introduction to the Guidelines Manual might be readily summarized through a simple principle: when the Sentencing

9

Commission has not specified in the guideline how to adjust an offense level based on various potentially distinctive aspects of an offense, a district court should conclude it has relatively broad authority to use its departure authority to give sentencing effect to these potentially distinctive aspects of an offense that it identifies. Notably, the Supreme Court in *Koon* recognized and explicated this principle when it upheld a departure for defendants convicted under a criminal statute that was "unusual for its application in so many varied circumstances" and sentenced under a Guideline applicable to "any violation of [this statute] regardless of the form it takes." *Koon*, 518 U.S. at 101; *see also id.* at 105 (holding that the district court in its departure analysis "did not abuse its discretion in differentiating between the classes of cases" which would be treated similarly under the applicable guideline).

A reasonable argument could be made, based on the Sentencing Commission's discussion of how it constructed the guidelines (and the reality that infrequently-applied guidelines will rarely be amended even if they do not work well), that a district court should feel a heightened obligation to depart from the guidelines whenever it identifies "an important factor [that] may infrequently occur" because "rare occurrences are precisely the type of events that the courts' departure powers were designed to cover." U.S. Sentencing Guidelines Manual, ch. 1, pt. A, introductory cmt. 4(a) (2013). At the very least, the Sentencing Commission's own account of how the guidelines were meant to function buttresses the notion that this Court can and should conclude that it has considerable discretion to give effect at sentencing, through its heartland analysis and departure decision-making, to any distinctive aspect of the defendants' offense conduct which it concludes "should result in a sentence different from that described" in the guidelines.

## III.     Integrating Departure Analysis and 3553(a) Variance Considerations

The discussion of heartland and departure analysis set forth in Parts I and II above builds upon considerations that pre-date the Supreme Court's landmark ruling in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the guidelines advisory and now requires district courts to give full attention to all the factors Congress set forth in 18 U.S.C. § 3553(a).   In the wake of *Booker*, many litigants and a number of courts seem eager to bypass or belittle traditional departure analysis — perhaps because traditional departure arguments often "require complex analysis of [applicable] guidelines and statutes," Order at 10, and because departure decision-making requires confronting opaque precedents like *Koon* and copious pre-*Booker* circuit jurisprudence discussing limits on a district court's sentencing discretion.  (Indeed, Amicus fears the dense discussion above might well prompt the litigants and the Court in this case to be eager to move on to other issues.) Nevertheless, Amicus believe it is good policy and practice for a district court to consider and resolve traditional departure issues initially and independently of the broader sentencing considerations and judgments that must come to bear as a sentencing court discharges its post-*Booker* obligations under 18 U.S.C. § 3553(a).

Because rulings from the Supreme Court and circuit courts now stress the breath of a district court's sentencing discretion after *Booker*, thoughtful and reasoned sentencing decisions focused on the factors Congress set forth in 18 U.S.C. § 3553(a) will almost always be deemed reasonable. But just how a district court explains and justifies its sentencing decisions plays an important role in the continued development of sound and effective federal sentencing law.[5]  Traditional departure

---

[5] Early proponents of guideline sentencing systems expected departures from the guidelines to play a fundamental role in the system's continued development of principled sentencing law.  Both before and after *Booker*, judicial articulation and review of reasons for sentencing outside the guidelines has contributed to the emergence of a "common law of sentencing" that enable federal judges, informed by their case-specific insights, to have a say in the evolution of federal sentencing law and policy.

analysis will usually focus on a precisely-identified narrow fact or factor and any related guideline provision, which in turn requires judicial engagement of arguments for and against a departure through a more focused and granular analysis of how one particular factor and a specific guideline ought to be interpreted (and perhaps reassessed) in the future by other courts and the Commission. In (slight but significant) contrast, the broader sentencing considerations and judgments that must come to bear as a sentencing court discharges its post-*Booker* obligations under 18 U.S.C. § 3553(a) will usually provide a more generalized view and accounting of judicial perspectives on just what sorts of sentences for what sorts of defendants are "sufficient but not greater than necessary" to serve the purposes of punishment set forth in the 18 U.S.C. § 3553(a)(2). For these reasons, Amicus suggests that if and whenever a defendant expressly seeks a traditional departure based on prior good works (or any other precisely-identified narrow fact or factor), a district court should consider and resolve this claim on its own distinct merits and should only thereafter, with the departure arguments resolved and the guideline range adjusted accordingly, then separately consider the underlying facts and factors in conjunction with all other relevant considerations deemed integral to discharging the court's broader post-*Booker* sentencing responsibilities under 18 U.S.C. § 3553(a).

### Conclusion

The Supreme Court in *Koon* stressed that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 101. Amicus hopes that this friend-of-the-court brief can aid this Court in carrying out this important federal judicial tradition in the case at bar.

12